```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                   ASHEVILLE DIVISION
                     1:09CV92-MU-02
```

| | |
|---|---|
| **WILLIAM F. CASE,** )<br>    **Petitioner,** )<br> )<br>    v. )<br> )<br>**STATE OF NORTH CAROLINA,** )<br>    **Respondent.** )<br>_____) | **ORDER** |

**THIS MATTER** comes before the Court on Petitioner's "Petition Under 28 U.S.C. § 2254 For Writ Of <u>Habeas Corpus</u> . . . ," filed March 9, 2009 (document # 1).

Rule 4 of the Rules Governing Section 2254 Cases, directs <u>habeas</u> courts promptly to examine <u>habeas</u> petitions. When it plainly appears from any such petition and any attached exhibits that the petitioner is not entitled to relief, the reviewing court must dismiss the petition. For the reasons stated herein, Petitioner's <u>Habeas</u> Petition will be <u>dismissed</u> as time-barred.

### I. FACTUAL AND PROCEDURAL BACKGROUND

According to the Petition and the more than hundred pages of exhibits submitted by Petitioner, on January 27, 2007, he pled guilty to one count of first degree murder and one count of assault with a deadly weapon with intent to kill or inflict serious injury. Upon being convicted, the Superior Court of Henderson County

sentenced Petitioner to a term of life imprisonment without the possibility of parole on the murder conviction, and to 129 months imprisonment on the assault conviction. Petitioner did <u>not</u> appeal either his convictions or sentences.

Rather, after a delay of nearly 14 months, on March 5, 2008, Petitioner initiated his pursuit of collateral review by filing a Motion for Appropriate Relief ("MAR," hereafter) in the Superior Court of Henderson County, challenging numerous aspects of his cases, including the effectiveness of his counsel, the legality of his interrogation, and the legality of his guilty pleas. However, Petitioner's MAR was denied on the grounds that the majority of his claims were waived by the entry of his guilty pleas, and his remaining claims were belied by the transcript of his plea and sentencing hearing. Additionally, Petitioner filed Petitions for Writs of <u>Certiorari</u> in both the State Court of Appeals and the State Supreme Court. Nevertheless, the State Court of Appeals eventually denied Petitioner's <u>Certiorari</u> Petition in October 2008, and the State Supreme Court dismissed his other Petition on February 5, 2009, thereby concluding Petitioner's pursuit of collateral review in State Court.

Now, Petitioner has filed the instant federal § 2254 Petition attempting to challenge, <u>inter alia</u>, the legality of his trial proceedings on the ground that he did not receive a competency hearing during the course of his proceedings; the validity of his

guilty pleas; the effectiveness of counsel; and the legality of his interrogation. Notwithstanding his stated beliefs to the contrary, however, the Court finds that Petitioner's Motion is untimely and must be summarily dismissed.

## II. **ANALYSIS**

Indeed, in April 1996, the U.S. Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA, hereafter), effectively amending 28 U.S.C. §2254 by adding the following language:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review:
>
> (B) the date on which the impediment to filing an application created by State in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court; if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Furthermore, the AEDPA provides that the time during which a

properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In the instant case, as the Court has noted, Petitioner's convictions and sentences were imposed on January 29, 2007, and he did <u>not</u> directly appeal those matters. Under those circumstances, then, Petitioner's cases became final under 28 U.S.C. § 2244(d)(1)(A), at the latest, on February 12, 2007, that is, when the time for seeking direct review expired. <u>See</u> <u>Clay v. United States</u>, 537 U.S. 522, 528 (2003)(holding that AEDPA 1-year limitations period starts running from the date when the judgement of conviction became final at the end of direct review, or when the time for seeking such direct review expired); <u>and</u> N.C.R.App. P. 4(a)[1] (now providing fourteen days for service of notice of appeal). Ultimately, then, in the absence of any intervening circumstances, Petitioner had up to and including February 12, 2008, in which to file the instant § 2254 Petition. Obviously, however, Petitioner did <u>not</u> file this Petition by that February 2008 deadline.

Moreover, while it has not escaped the Court's attention that Petitioner did seek post-conviction review in the State court

---

[1] Prior to 2001, North Carolina law provided a 10-day period in which to give notice of an appeal. However, by 2007, Rule 4 already had been amended to provide the 14-day period which is applicable herein.

4

system, that fact is of little consequence here. To be sure, Petitioner did not initiate pursuit of that collateral review until March 5, 2008, which was more than one year <u>after</u> his convictions and sentences became final. To put it another way, by the time Petitioner filed that MAR, his February 2008 AEDPA deadline already had fully expired. Consequently, because it is well settled that subsequently filed motions or petitions for collateral review in State court cannot somehow breathe new life into already expired federal limitations periods, Petitioner's delayed pursuit of State collateral review simply came too little too late. <u>See</u> <u>Minter v. Beck</u>, 230 F.3d 663 (4th Cir. 2000) (time period after case became final for purposes of direct appellate review but before initiation of State collateral review is not tolled from one-year limitations period). In short, the time during which Petitioner pursued collateral review cannot be used to toll the one-year limitations period.

Having allowed more than 13 months to elapse between the time his convictions and sentences became final and the date he began his pursuit of federal relief, Petitioner was in the position to know that this Petition might be construed as time-barred.[2]

---

[2] In January 2002, the Fourth Circuit Court of Appeals decided the case of <u>Hill v. Braxton</u>, 277 F.3d 701, 706 (4th Cir. 2002). There, the Court concluded that "when a federal <u>habeas</u> court, prior to trial, perceives a <u>pro-se</u> [petition or motion to vacate] to be untimely and the state has not filed a motion to dismiss based upon the one-year limitations period, the [district] court must warn the petitioner that the case is subject to dismissal . . . absent a sufficient explanation." Consistent with that requirement, in December 2004, the Administrative Office of the Courts modified the federal <u>habeas</u> forms to comply with <u>Hill</u>. The 2004 forms include a section which

Indeed, question 18 on his form-Petition prompts petitioners whose judgments of conviction became final more than a year before the initiation of their habeas Petitions to "explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar [their] Petition[s]." In response to such question, Petitioner states:

> Petitioner in this matter tried to file a timely appeal. But do [sic] to State action petitioner was unable to file an appeal in the one year time limit. When petitioner could not file with in the time limit. Petitioner filed a motion titled motion to extend time for habeas corpus. This was filed on January 23, 2008 in the U.S. District Court Western District (see attached). Petitioner at that time could not get the help that is constitutionaly [sic] mandated from N.C. prison legal services. When petitioner did get a response it said they do not offer legal advice, copying or case law. They did say they could send a post conviction Packet. This took several months of writing to get. The packet contained legal forms for appeals in state court and incomplete instructions. To add to this problem petitioner could not get court appointed counsel to file a appeal or to turn over legal paper work so petitioner could file an appeal. In the motion mentioned above petitioner asked the Court to order N.C. prison legal services and court appointed counsel to turn over the necessary paper work

---

directs petitioners to address the "timeliness of their motions." In particular, question 18 on the new form advises the petitioner that if his/her conviction became final more than one year before the time that the habeas petition is being submitted, he/she "must explain why the one-year statute of limitations as contained in 28 U.S.C. §2244(d) [also set forth on the form] does not bar [such] petition." Accordingly, given the fact that Petitioner has attempted to set forth an explanation as to why his Petition should be deemed timely filed -- albeit, unsuccessfully, this Court concludes that he is not entitled to any further warnings or opportunities.

6

> to file an appeal. Petitioner filed an appeal[3] as soon as petitioner received all necessary paper work to file an appeal.

Suffice it to say, however, the foregoing statements do not provide a statutory basis for excusing Petitioner's delay in filing this Petition.

To be sure, although Petitioner's document requesting an extension of time, which was received by this Court on January 23, 2008, does report that he had made attempts "to obtain documents from [his] lawyers, courts, as well as Prison Legal Services," but "no one ha[d] responded to [his] request[s]," such assertions fall far short of establishing either that he was delayed by a State-created impediment, that he is relying upon a newly recognized, retroactively applicable ground for his claim(s), or that he is relying upon a newly discovered claim. Thus, he cannot rely upon § 2254(d) to establish the timeliness of his Motion to Vacate.

Moreover, the Court is aware that equitable tolling of the AEDPA statute of limitations is allowed in "rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitations period against the party and gross injustice would result." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2004) (en banc). However, a review of the above

---

[3] Although Petitioner reports that he filed an "appeal," the Court carefully has searched through the 351-page Petition and has conducted research on Westlaw and has found no evidence that Petitioner ever filed a direct appeal in the North Carolina Court of Appeals or the Supreme Court of North Carolina. Presumably, Petitioner's reference to an "appeal" is to his pursuit of collateral review in State court.

7

statements clearly shows that Petitioner also has not articulated any such rare circumstances for equitable tolling. Indeed, even considering the fact that Petitioner submitted a Motion for a 60-day extension of time to file his federal Petition -- just as his one-year limitations period was expiring -- that effort does not entitle him to the application of equitable tolling.

First, this Court is not aware of any authority upon which it could have relied in order to grant that request. That is, the Fourth Circuit Court of Appeals has not yet ruled on the question of whether a district court has the authority to extend AEDPA's deadline. However, the weight of authority of those courts of appeals which have considered this issue is that there is no such authority. See United States v. Leon, 203 F.3d 162 (2d Cir. 2000); United States v. McFarland, 125 Fed. App'x 573 (5th Cir. April 6, 2005); United States v. Callahan, 2003 WL 21554914 (5th Cir. July 9, 2003); United States v. Moore, 56 Fed. App'x 686 (6th Cir. Jan. 24, 2003); Washington v. United States, 221 F.3d 1354 (10th Cir. 2000). In fact, several of the Courts which have considered this question found that district courts do not even have the authority to consider the timeliness of a petitioner's federal petition until that petition actually is filed because a mere motion for an extension of time does not present a "case or controversy" within the meaning of Article III of the United States Constitution. See United States v. Roy, 2007 WL 4209623 (W.D. Va. Nov. 27, 2007);

Ramirez v. United States, 461 F.Supp. 2d 439 (E.D. Va. Nov. 8, 2006).

Second, the Court finds that equitable tolling would be particularly inappropriate here, where Petitioner inexplicably allowed all but 23 of the 365 days of his one-year limitations period to expire before he took any action even to inquire about the status of his federal collateral rights. While Petitioner was entitled to delay his actions in that way, he did so at his own peril, and so must fully bear the consequences of that unwise decision.

Third, and perhaps most importantly, Petitioner has not explained why he knowingly waited until days before his one-year period was to expire before inquiring about the status of his federal collateral rights in this Court. Nor has Petitioner pointed to any matter external to his own conduct which would make it unconscionable for this Court to impose the limitations period as a bar to his review. Therefore, equitable tolling cannot be used to excuse Petitioner's delay.

Moreover, the Court also is aware of the Fourth Circuit's recent decision in Bilal v. North Carolina, 287 Fed. App'x 241 (4th Cir. July 18 2008), in which the Court, specifically limiting its holding to the facts of that case, concluded that this Court's sua sponte dismissal of a § 2254 Petition was premature. However, this case is distinguishable from Bilal.

In Bilal, the petitioner responded to question 18 on his form petition with an ambiguous "N/A" response, thereby possibly reflecting his confusion as to either the question or his status. Here, however, Petitioner gave a lengthy but unpersuasive response to question 18 in an effort to excuse his delay. Moreover, unlike Bilal, this case does not involve a mere 30-day delay. Rather it involves a delay of more than one year from the time that Petitioner's cases became final in February 2007 until March 2008 when he even began his pursuit of State collateral review, and an additional year until Petitioner finally filed the instant Petition. As such, this Court finds Bilal inapplicable. In sum, therefore, the undersigned finds that Petitioner's untimeliness stands as an absolute bar to his entitlement to federal review.

### III. CONCLUSION

The Court has determined that the instant Habeas Corpus Petition was untimely filed without excuse. Therefore, this Petition will be dismissed.

### IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED that** Petitioner's Petition for a Writ of Habeas Corpus is **DISMISSED** as untimely filed.

**SO ORDERED.**

Signed: April 13, 2009

*/s/ Graham C. Mullen*

Graham C. Mullen
United States District Judge